UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO._____

CERTAIN UNDERWRITERS SUBSCRIBING
TO POLICY NUMBERS OMH-3484819, OBR
10014587201, B5JH85661, VCF2002512, and
AT4769A20MZA *as subrogee of* NORTHLINE
SEAFOODS LLC,

      Plaintiffs,

vs.

BLUE OCEAN TACKLE, INC., a dissolved
foreign profit corporation; BLUE OCEAN
MARINE EQUIPMENT, LLC, a Florida limited
liability company, as successor-in-interest;
VERONICA C. BARRETT, individually; and
STEPHANIE C. GUTIERREZ, individually,

      Defendants.

_____/

## **COMPLAINT**

     Plaintiffs, CERTAIN UNDERWRITERS SUBSCRIBING TO POLICY NUMBERS
OMH-3484819, OBR 10014587201, B5JH85661, VCF2002512, and AT4769A20MZA, *as
subrogee of* NORTHLINE SEAFOODS LLC (hereinafter, collectively, "CERTAIN
UNDERWRITERS"), by and through undersigned counsel, sue the Defendants, BLUE OCEAN
TACKLE, INC., BLUE OCEAN MARINE EQUIPMENT, LLC, VERONICA C. BARRETT, and
STEPHANIE C. GUTIERREZ, and state as follows:

### Jurisdiction and Venue

     1.    This is an action for damages in excess of $9,139,517.30 (Nine Million One
Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents), exclusive of
interest, costs, and attorney's fees.

2.     This Court has diversity jurisdiction pursuant to 28 U.S. Code § 1332 based upon diversity of citizenship and Admiralty jurisdiction pursuant to 28 U.S. Code § 1333. Specifically, the Defendants, BLUE OCEAN TACKLE, INC., BLUE OCEAN MARINE EQUIPMENT, LLC, VERONICA C. BARRETT, and STEPHANIE C. GUTIERREZ, reside in the State of Florida; and the insurance entities which comprise Plaintiffs, CERTAIN UNDERWRITERS, reside outside of the State of Florida as stated in more detail below:

a)  Great American Insurance Company was and is incorporated in Ohio, with its principal address at 301 E. 4th Street, Cincinnati, Ohio 45202;

b)  Endurance American Insurance Company was and is incorporated in Delaware, with its principal address at 4 Manhattanville Road, Purchase, NY 10577;

c)  Atlantic Specialty Insurance Company was and is incorporated in NY, with its principal place address at 605 Highway 169 North, Suite 800, Plymouth, MN 55441;

d)  Stratford Insurance Company was and is incorporated in New Hampshire, with its principal address at 300 Kimball Drive, Suite 500, Parsippany, NJ 07054; and

e)  Starstone National Insurance Company was and is incorporated in Delaware, with its principal address at 201 E. Fifth Street, Suite 1200, Cincinnati, Ohio 45202.

3.     Venue is proper pursuant to 28 U.S. Code § 1391 as the Defendants, BLUE OCEAN TACKLE, INC., BLUE OCEAN MARINE EQUIPMENT, LLC, VERONICA C. BARRETT, and STEPHANIE C. GUTIERREZ reside in the Southern District of Florida.

<u>Parties</u>

4.     At all material times, Plaintiffs, CERTAIN UNDERWRITERS, are compromised of the following insurance entities who provided insurance coverage to Northline Seafoods, Inc.,

pursuant to certain policies of insurance numbered OMH-3484819, OBR 10014587201, B5JH85661, VCF2002512, and AT4769A20MZA, and who reside outside of the State of Florida and are not citizens of the State of Florida:

    a)  Great American Insurance Company was and is incorporated in Ohio, with its principal address at 301 E. 4th Street, Cincinnati, Ohio 45202;

    b)  Endurance American Insurance Company was and is incorporated in Delaware, with its principal address at 4 Manhattanville Road, Purchase, NY 10577;

    c)  Atlantic Specialty Insurance Company was and is incorporated in NY, with its principal place address at 605 Highway 169 North, Suite 800, Plymouth, MN 55441;

    d)  Stratford Insurance Company was and is incorporated in New Hampshire, with its principal address at 300 Kimball Drive, Suite 500, Parsippany, NJ 07054; and

    e)  Starstone National Insurance Company was and is incorporated in Delaware, with its principal address at 201 E. Fifth Street, Suite 1200, Cincinnati, Ohio 45202.

5.    At all material times, Plaintiffs, CERTAIN UNDERWRITERS, were and are authorized to transact business and transacted business in Alaska.

6.    At all material times, Plaintiffs, CERTAIN UNDERWRITERS, were and are in the business of providing marine, property, casualty, and business loss insurance to individuals and businesses located in the State of Alaska and elsewhere.

7.    At all material times, Plaintiffs, CERTAIN UNDERWRITERS, in exchange for valuable consideration, provided insurance coverage to Northline Seafoods, Inc., pursuant to certain policies of insurance numbered OMH-3484819, OBR 10014587201, B5JH85661, VCF2002512, and AT4769A20MZA.

8.      At all material times, Northline Seafoods, LLC ("Northline"), was an Alaskan Limited Liability Company, with a principal address of 4690 Sawmill Creek Road, Sitka, Alaska 99835. Northline was dissolved on or about December 27, 2021.

9.      At all material times Defendant, BLUE OCEAN TACKLE, INC., was a foreign California for profit corporation, with a principal address of 5645 Coral Ridge Drive, #126, Coral Springs, FL 33076.

10.     Defendant, BLUE OCEAN TACKLE, INC., was formed in Florida by Mark Barrett in 2016.

11.     Upon information and belief, Mark Barrett was married to Defendant, VERONICA C. BARRETT.

12.     Unfortunately, upon information and belief, Mark Barrett passed away on or around September 14, 2020. *See*, Exhibit 8.

13.     Upon information and belief, Mark Barrett and Defendant, VERONICA C. BARRETT, resided together at 11330 Fairfield St., Parkland, FL 33076, and Defendant, VERONICA C. BARRETT, currently resides at 11330 Fairfield St., Parkland, FL 33076.

14.     On November 17, 2020, Defendant, BLUE OCEAN TACKLE, INC., was voluntarily dissolved. The Articles of Dissolution for Defendant, BLUE OCEAN TACKLE, INC., were electronically signed by Mark Barrett, who, upon information and belief, died on or about September 14, 2020. *See*, Exhibit 9.

15.     On November 17, 2020, Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, was formed, with an effective date of November 16, 2020.

16.     At all material times, Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, is a Florida limited liability company, with a principal address of 20423 SR 7, Suite 151, Boca Raton, FL 33498.

17.     Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, was formed by Defendant, VERONICA C. BARRETT, who was listed as its manager in its Articles of Organization.

18.     On or about April 8, 2021, Defendant, STEPHANIE C. GUTIERREZ, was listed as the EVP of Defendant, BLUE OCEAN MARINE EQUIPMENT LLC, and Defendant, VERONICA C. BARRETT, was not listed on the company's annual reports for 2021 or 2022.

19.     Upon information and belief, Defendant, STEPHANIE C. GUTIERREZ, resides at 416 SW 1st Ave., Apt. 602, Ft. Lauderdale, FL 33301.

20.     The website address for Defendant, BLUE OCEAN TACKLE, INC, is http://www.blueoceantackle.com. Typing in that address directs the user to the website for Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC. *See*, Exhibit 1.

21.     A comparison of the website for www.blueoceantackle.com from or around July 3, 2020, using the Wayback Machine shows that both websites are substantially the same, including:

- Both feature a photograph at the top of their home pages that states: "YOUR #1 SOURCE for Marine Supply" with Blue Ocean Tackle, Inc. including the additional words "for Fishing & Marine Supply";

- Both include similar descriptions under the photograph on their home pages for Marine Supply, Workboat Equipment, Ship Hardware, Offshore Oil Equipment, and Ship Launching Air Bags in the same order with Blue Ocean Tackle, Inc.

adding Saltwater Fishing Tackle, Commercial Fishing Supply, Shark Fishing Equipment, and Big Game Trolling Gear; and

- Both include the following descriptions on their home pages:

> Blue Ocean Tackle Inc
> "A Veteran Owned Small Business"
> Blue Ocean Tackle Inc supplies marine equipment, ship hardware, and commercial fishing equipment. We offer a full line of anchors, chain, Yokohama pneumatic fenders and foam filled fenders such as the Ocean Guard and Ocean Cushions. We supply ship salvage airbags and ship launching airbags. Our commercial fishing equipment includes electric and hydraulic bottom fishing reels and pot haulers. We offer a full line of marine hardware that includes pelican hook chain stoppers, buoy hooks, stud link anchor chain, mooring chain, shackles, swivels, Kenter links, wire rope, custom rigging, and more.

> Blue Ocean Marine Equipment
> "A Veteran Widow Owned Small Business"
> Blue Ocean Marine Equipment supplies marine equipment, ship hardware, and commercial fishing equipment. We offer a full line of anchors, chain, Yokohama pneumatic fenders and foam filled fenders such as the Ocean Guard and Ocean Cushions. We supply ship salvage airbags and ship launching airbags. We offer a full line of marine hardware that includes buoy hooks, stud link anchor chain, mooring chain, shackles, swivels, Kenter links, wire rope, custom rigging, and more.

*See*, Exhibit 2.

22.     In addition, Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, appears to sell the same buoys as the subject buoy of this matter. *See*, Exhibit 3.

23.     Upon information and belief, Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, is the successor-in-interest for Defendant, BLUE OCEAN TACKLE, INC., by being a continuation for Defendant, BLUE OCEAN TACKLE, INC., including the purchase or acquisition of the assets of Defendant, BLUE OCEAN TACKLE, INC.

<u>General Allegations</u>

24.     On or about March 5, 2019, Northline purchased a buoy (and associated equipment) from Defendant, BLUE OCEAN TACKLE INC. The buoy was a 58-inch steel round mooring buoy, foam-filled, with pad eyes (the "Buoy"). *See*, Invoice attached as Exhibit 4.

25.     The manufacturer of the Buoy is currently unknown.

26.     The Buoy was used in the waters offshore of the Village of Ekuk, Alaska.

27.     Barge SM3 (Official No. 505535) was a 1966 fishing tender barge used by Northline (the "Barge").

28.     On or about August 30, 2020, the Barge was moored to the Buoy south of the village of Ekuk, Alaska.

29.     At all material times, there were six individuals on board the Barge.

30.     While moored to the Buoy, a storm arose with heavy winds and sea conditions.

31.     During the storm, the Barge separated at the top shell plate of the Buoy and began drifting.

32.     The Barge eventually grounded on a nearby beach at or around Flounder Flat, causing a 3-mile debris field and 100 gallons diesel spill.

33.     As a result, the Barge was a constructive total loss.

34.     Thankfully, the six individuals on board the Barge were unharmed.

35.     The Barge was later salvaged by Global Diving & Salvage, Inc.

36.     On January 14, 2021, Simon Forensic, LLC issued a report on its findings regarding the cause of the loss of the Barge ("Simon Forensic Report"). *See*, Exhibit 5.

37.     The Simon Forensic Report noted:

> The **buoy has functionally failed**, i.e. a **separating crack** had formed at the **fillet weld** of the **topside padeye** thus **allowing the separation (liberation) of the padeye from the buoy.**

The **topside padeye** (buoy) **was structurally compromised at the time of the incident**, i.e. a small fatigue crack had been present thus providing a mechanical stress riser.

**No metallurgical or welding related defects** related to the padeye failure were found to have caused or contributed to the failure.

*See*, Exhibit 5 at pg. 4 (emphasis in original).

38.     The Simon Forensic Report also noted that the shackles did not fail.

39.     On June 4, 2021, Alaska Marine Surveyors, Inc. issued a Third Supplemental Damage Report ("AMS Damage Report"). *See*, Exhibit 6.

40.     The AMS Damage Report noted: "The Buoy Ball was not manufactured with an internal rod backing support, connecting and between the upper/lower padeyes, which load rod connect would be necessary for the type of loads expected for the Barge SM3 to utilize for moorage purposes…As previously discussed in AMS, Inc's 2nd Supplemental Damage Report, dated February 3, 2021 and previously submitted, under 'Comments,' the Buoy Ball construction appears reversed for load strength for an at-sea moorage buoy of its size, and appearance, as capable for heavy loads and even without the inner padeye upper/lower reinforcement connect rod, the Ball shell thickness strength is inferior to both the padeye cap and the padeye itself, that the padeye load capability itself is far beyond the cap plate and shell combined." *See*, Exhibit 6 at pg. 2.

41.     Thus, the Buoy was structurally compromised before the storm event.

42.     The damages from the loss total $6.9 million for the constructive total loss of the Barge, less $15,000 recovered for salvage value, and $2,254,517.30 for wreck removal and associated pollution mitigation for a total of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents).

43.     Northline reported the claim to CERTAIN UNDERWRITERS, and CERTAIN

UNDERWRITERS have paid the claim. As a result of the payments made by CERTAIN UNDERWRITERS under the applicable policy of insurance, CERTAIN UNDERWRITERS have become subrogated to the rights of Northline to the extent of all payments made. *See*, Exhibit 7, Payment Order.

44.     All conditions precedent have occurred, been performed, or been waived.

COUNT I - PRODUCT DEFECT
(BLUE OCEAN TACKLE, INC.)

45.     Plaintiffs, CERTAIN UNDERWRITERS, reincorporate and reallege paragraphs 1 – 44 as though fully set forth herein.

46.     Defendant, BLUE OCEAN TACKLE, INC., sold, supplied, distributed, warranted, marketed, packaged, and/or sold the Buoy.

47.     Defendant, BLUE OCEAN TACKLE, INC., had a duty to deliver to Northline a Buoy that was free of defects and that would perform as warranted.

48.     Defendant, BLUE OCEAN TACKLE, INC., breached that duty in that the Buoy was defective, structurally compromised, had inferior shell thickness, and did not have an internal rod backing support, at the time it was delivered, which led to a separating crack that caused the Barge to break free from the Buoy during the storm.

49.     The Buoy failed during a storm event with estimated wind speeds of 43 to 52 knots, which should not have been out of the range of the Buoy's capabilities.

50.     As a result, the Barge was a total loss.

51.     Plaintiffs, CERTAIN UNDERWRITERS, have been damaged in the amount of 6.9 million dollars for the constructive total loss of the Barge, less $15,000 recovered for salvage value, and $2,254,517.30 for wreck removal and associated pollution mitigation for a total of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen

Dollars and Thirty Cents).

WHEREFORE, Plaintiffs, CERTAIN UNDERWRITERS SUBSCRIBING TO POLICY NUMBERS OMH-3484819, OBR 10014587201, B5JH85661, VCF2002512, and AT4769A20MZA, *as subrogee of* NORTHLINE SEAFOODS LLC, demand judgment against Defendant, BLUE OCEAN TACKLE, INC., in the amount of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents), plus pre and post-judgment interest, and its Court costs, and for all other relief deemed proper and just by this Court.

COUNT II - PRODUCT DEFECT
(BLUE OCEAN MARINE EQUIPMENT, LLC)

52.    Plaintiffs, CERTAIN UNDERWRITERS, reincorporate and reallege paragraphs 1 – 44 as though fully set forth herein.

53.    Defendant, BLUE OCEAN TACKLE, INC., sold, supplied, distributed, warranted, marketed, packaged, and/or sold the Buoy.

54.    Defendant, BLUE OCEAN TACKLE, INC., had a duty to deliver to Northline a Buoy that was free of defects and that would perform as warranted.

55.    Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, is the successor-in-interest to Defendant, BLUE OCEAN TACKLE, INC., by virtue of being a mere continuation after the death of Mark Barrett, and through the purchase and/or acquisition of the assets of Defendant, BLUE OCEAN TACKLE, INC., by Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC.

56.    Defendant, BLUE OCEAN TACKLE, INC., breached that duty in that the Buoy was defective, structurally compromised, had inferior shell thickness, and did not have an internal rod backing support, at the time it was delivered, which led to a separating crack that caused the

10

Barge to break free from the Buoy during the storm.

57.     The Buoy failed during a storm event with estimated wind speeds of 43 to 52 knots, which should not have been out of the range of the Buoy's capabilities.

58.     As a result, the Barge was a total loss.

59.     Plaintiffs, CERTAIN UNDERWRITERS, have been damaged in the amount of 6.9 million dollars for the constructive total loss of the Barge, less $15,000 recovered for salvage value, and $2,254,517.30 for wreck removal and associated pollution mitigation for a total of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents).

WHEREFORE, Plaintiffs, CERTAIN UNDERWRITERS SUBSCRIBING TO POLICY NUMBERS   OMH-3484819,   OBR   10014587201,   B5JH85661,   VCF2002512,   and AT4769A20MZA, *as subrogee of* NORTHLINE SEAFOODS LLC, demand judgment against Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, in the amount of  $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents), plus pre and post-judgment interest, and its Court costs, and for all other relief deemed proper and just by this Court.

<u>COUNT III – NEGLIGENCE</u>
(BLUE OCEAN TACKLE, INC.)

60.     Plaintiffs, CERTAIN UNDERWRITERS, reincorporate and reallege paragraphs 1 – 44 as though fully set forth herein.

61.     Defendant, BLUE OCEAN TACKLE, INC., sold, supplied, distributed, warranted, marketed, packaged, and/or sold the Buoy.

62.     Defendant, BLUE OCEAN TACKLE, INC., had a duty to deliver to Northline a Buoy that was free of defects and that would perform as warranted.

63.    Defendant, BLUE OCEAN TACKLE, INC., breached that duty in that the Buoy was defective, structurally compromised, had inferior shell thickness, and did not have an internal rod backing support, at the time it was delivered, which led to a separating crack that caused the Barge to break free from the Buoy during the storm.

64.    The Buoy failed during a storm event with estimated wind speeds of 43 to 52 knots, which should not have been out of the range of the Buoy's capabilities.

65.    As a result, the Barge was a total loss.

66.    Defendant, BLUE OCEAN TACKLE, INC., knew or should have known that the Buoy was structurally compromised at the time it was supplied to Northline.

67.    Plaintiffs, CERTAIN UNDERWRITERS, *as subrogee of* NORTHLINE SEAFOODS LLC has been damaged in the amount of 6.9 million dollars for the constructive total loss of the Barge, less $15,000 recovered for salvage value, and $2,254,517.30 for wreck removal and associated pollution mitigation for a total of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents).

WHEREFORE, Plaintiffs, CERTAIN UNDERWRITERS SUBSCRIBING TO POLICY NUMBERS   OMH-3484819,   OBR   10014587201,   B5JH85661,   VCF2002512,   and AT4769A20MZA, *as subrogee of* NORTHLINE SEAFOODS LLC, demand judgment against Defendant, BLUE OCEAN TACKLE, INC., in the amount of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents), plus pre and post-judgment interest, and its Court costs, and for all other relief deemed proper and just by this Court.

COUNT IV - NEGLIGENCE
(BLUE OCEAN MARINE EQUIPMENT, LLC)

68.    Plaintiffs, CERTAIN UNDERWRITERS, reincorporate and reallege paragraphs 1

12

– 44 as though fully set forth herein.

69.     Defendant, BLUE OCEAN TACKLE, INC., sold, supplied, distributed, warranted, marketed, packaged, and/or sold the Buoy.

70.     Defendant, BLUE OCEAN TACKLE, INC., had a duty to deliver to Northline a Buoy that was free of defects and that would perform as warranted.

71.     Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, is the successor-in-interest to Defendant, BLUE OCEAN TACKLE, INC., by virtue of being a mere continuation after the death of Mark Barrett, and through the purchase and/or acquisition of the assets of Defendant, BLUE OCEAN TACKLE, INC., by Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC.

72.     Defendant, BLUE OCEAN TACKLE, INC., breached that duty in that the Buoy was defective, structurally compromised, had inferior shell thickness, and did not have an internal rod backing support, at the time it was delivered, which led to a separating crack that caused the Barge to break free from the Buoy during the storm.

73.     The Buoy failed during a storm event with estimated wind speeds of 43 to 52 knots, which should not have been out of the range of the Buoy's capabilities.

74.     As a result, the Barge was a total loss.

75.     Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, knew or should have known that the Buoy was structurally compromised at the time it was supplied to Northline.

76.     Plaintiffs, CERTAIN UNDERWRITERS, have been damaged in the amount of 6.9 million dollars for the constructive total loss of the Barge, less $15,000 recovered for salvage value, and $2,254,517.30 for wreck removal and associated pollution mitigation for a total of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen

Dollars and Thirty Cents).

WHEREFORE, Plaintiffs, CERTAIN UNDERWRITERS SUBSCRIBING TO POLICY NUMBERS   OMH-3484819,   OBR   10014587201,   B5JH85661,   VCF2002512,   and AT4769A20MZA, *as subrogee of* NORTHLINE SEAFOODS LLC, demand judgment against Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, in the amount of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents), plus pre and post-judgment interest, and its Court costs, and for all other relief deemed proper and just by this Court.

COUNT V – FRAUD
(VERONICA C. BARRETT)

77.     Plaintiffs, CERTAIN UNDERWRITERS, reincorporate and reallege paragraphs 1 – 44 as though fully set forth herein.

78.     Defendant, BLUE OCEAN TACKLE, INC., was formed in Florida by Mark Barrett in 2016.

79.     Defendant, VERONICA C. BARRETT, was the spouse of Mark Barrett.

80.     Unfortunately, upon information and belief, Mark Barrett passed away on or around September 14, 2020. *See*, Exhibit 8.

81.     On November 17, 2020, Defendant, BLUE OCEAN TACKLE, INC., was voluntarily dissolved.

82.     The Articles of Dissolution state at the bottom before the signature line: "I submit this document and affirm that the facts stated herein are true. I am aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in section 817.155, Florida Statutes." *See*, Exhibit 9.

83.     The Articles of Dissolution for Defendant, BLUE OCEAN TACKLE, INC., was electronically signed by Mark Barrett on November 17, 2020. *See*, Exhibit 9.

84.     Mark Barrett could not have signed the Articles of Dissolution for Defendant, BLUE OCEAN TACKLE, INC., if he was deceased on September 14, 2020.

85.     No documents were filed with the Secretary of State indicating that an agent or executor of Mark Barrett's estate signed the Articles of Dissolution.

86.     No documents were filed with the Secretary of State indicating that anyone other than Mark Barrett signed the Articles of Dissolution.

87.     Upon information and belief, the signature of Mark Barrett on the Articles of Dissolution was fraudulent.

88.     Upon information and belief, Mark Barrett's widow, VERONICA C. BARRETT, signed the Articles of Dissolution and/or had knowledge that the signature on the Articles of Dissolution was fraudulent.

89.     Upon information and belief, Defendant, VERONICA C. BARRETT, distributed the assets of Defendant, BLUE OCEAN TACKLE, INC., and formed its successor-in-interest, Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC.

90.     Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, is the successor-in-interest to Defendant, BLUE OCEAN TACKLE, INC., by virtue of being a mere continuation after the death of Mark Barrett, and through the purchase and/or acquisition of the assets of Defendant, BLUE OCEAN TACKLE, INC., by Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC.

91.     Upon information and belief, the actions of Defendant, VERONICA C. BARRETT, were done independently and/or in the course and scope of her employment with Defendant, BLUE

OCEAN TACKLE, INC., and/or its successor-in-interest, Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC.

92.     Defendant, BLUE OCEAN TACKLE, INC., sold, supplied, distributed, marketed, packaged, and/or sold the Buoy.

93.     The Buoy was structurally compromised, had inferior shell thickness, and did not have an internal rod backing support, which led to a separating crack that caused the Barge to break free from the Buoy during the storm.

94.     The Buoy failed during a storm event with estimated wind speeds of 43 to 52 knots, which should not have been out of the range of the Buoy's capabilities.

95.     As a result, the Barge was a total loss.

96.     Plaintiffs, CERTAIN UNDERWRITERS, have been damaged in the amount of 6.9 million dollars for the constructive total loss of the Barge, less $15,000 recovered for salvage value, and $2,254,517.30 for wreck removal and associated pollution mitigation for a total of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents).

WHEREFORE, Plaintiffs, CERTAIN UNDERWRITERS SUBSCRIBING TO POLICY NUMBERS OMH-3484819, OBR 10014587201, B5JH85661, VCF2002512, and AT4769A20MZA, *as subrogee of* NORTHLINE SEAFOODS LLC, demand judgment against Defendant, VERONICA C. BARRETT, in the amount of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents), plus pre and post-judgment interest, and its Court costs, and for all other relief deemed proper and just by this Court.

COUNT VI- FRAUD
(STEPHANIE C. GUTIERREZ)
(In the Alternative)

97.     Plaintiffs, CERTAIN UNDERWRITERS, reincorporate and reallege paragraphs 1 – 44 as though fully set forth herein.

98.     Defendant, BLUE OCEAN TACKLE, INC., was formed in Florida by Mark Barrett in 2016.

99.     Defendant, VERONICA C. BARRETT, was the spouse of Mark Barrett.

100.    Unfortunately, upon information and belief, Mark Barrett passed away on or around September 14, 2020. *See*, Exhibit 8.

101.    On November 17, 2020, Defendant, BLUE OCEAN TACKLE, INC., was voluntarily dissolved.

102.    The Articles of Dissolution state at the bottom before the signature line: "I submit this document and affirm that the facts stated herein are true. I am aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in section 817.155, Florida Statutes." *See*, Exhibit 9.

103.    The Articles of Dissolution for Defendant, BLUE OCEAN TACKLE, INC., was electronically signed by Mark Barrett on November 17, 2020. *See*, Exhibit 9.

104.    Mark Barrett could not have signed the Articles of Dissolution for Defendant, BLUE OCEAN TACKLE, INC., if he was deceased on September 14, 2020.

105.    No documents were filed with the Secretary of State indicating that an agent or executor of Mark Barrett's estate signed the Articles of Dissolution.

106.    No documents were filed with the Secretary of State indicating that anyone other than Mark Barrett signed the Articles of Dissolution.

107.    Upon information and belief, the signature of Mark Barrett on the Articles of Dissolution was fraudulent.

108.    Upon information and belief, Defendant, STEPHANIE C. GUTIERREZ, signed the Articles of Dissolution and/or had knowledge that the signature on the Articles of Dissolution was fraudulent.

109.    Upon information and belief, Defendant, VERONICA C. BARRETT, distributed the assets of Defendant, BLUE OCEAN TACKLE, INC., and formed its successor-in-interest, Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC.

110.    Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, is the successor-in-interest to Defendant, BLUE OCEAN TACKLE, INC., by virtue of being a mere continuation after the death of Mark Barrett, and through the purchase and/or acquisition of the assets of Defendant, BLUE OCEAN TACKLE, INC., by Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC.

111.    On or about April 8, 2021, Defendant, STEPHANIE GUTIERREZ, was listed as the EVP of Defendant, BLUE OCEAN MARINE EQUIPMENT LLC, and on the company's annual report for 2022.

112.    Upon information and belief, the actions of Defendant, STEPHANIE C. GUTIERREZ, were done independently and/or in the course and scope of her employment with Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, the successor-in-interest to Defendant, BLUE OCEAN TACKLE, INC.

113.    Defendant, BLUE OCEAN TACKLE, INC., sold, supplied, distributed, marketed, packaged, and/or sold the Buoy.

114.    The Buoy was structurally compromised, had inferior shell thickness, and did not

have an internal rod backing support, which led to a separating crack that caused the Barge to break free from the Buoy during the storm.

115.    The Buoy failed during a storm event with estimated wind speeds of 43 to 52 knots, which should not have been out of the range of the Buoy's capabilities.

116.    As a result, the Barge was a total loss.

117.    Plaintiffs, CERTAIN UNDERWRITERS, have been damaged in the amount of 6.9 million dollars for the constructive total loss of the Barge, less $15,000 recovered for salvage value, and $2,254,517.30 for wreck removal and associated pollution mitigation for a total of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents).

WHEREFORE, Plaintiffs, CERTAIN UNDERWRITERS SUBSCRIBING TO POLICY NUMBERS   OMH-3484819,   OBR   10014587201,   B5JH85661,   VCF2002512,   and AT4769A20MZA, as subrogee of NORTHLINE SEAFOODS LLC, demand judgment against Defendant, STEPHANIE C. GUTIERREZ, in the amount of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents), plus pre and post-judgment interest, and its Court costs, and for all other relief deemed proper and just by this Court.

<u>COUNT VII – FRAUD AFTER-THE-FACT</u>
(STEPHANIE C. GUTIERREZ)

118.    Plaintiffs, CERTAIN UNDERWRITERS, reincorporate and reallege paragraphs 1 – 44 as though fully set forth herein.

119.    Defendant, BLUE OCEAN TACKLE, INC., was formed in Florida by Mark Barrett in 2016.

120.    Defendant, VERONICA C. BARRETT, was the spouse of Mark Barrett.

19

121.    Unfortunately, upon information and belief, Mark Barrett passed away on or around September 14, 2020. *See*, Exhibit 8.

122.    On November 17, 2020, Defendant, BLUE OCEAN TACKLE, INC., was voluntarily dissolved.

123.    The Articles of Dissolution state at the bottom before the signature line: "I submit this document and affirm that the facts stated herein are true. I am aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in section 817.155, Florida Statutes." *See*, Exhibit 9.

124.    The Articles of Dissolution for Defendant, BLUE OCEAN TACKLE, INC., was electronically signed by Mark Barrett on November 17, 2020. *See*, Exhibit 9.

125.    Mark Barrett could not have signed the Articles of Dissolution for Defendant, BLUE OCEAN TACKLE, INC., if he was deceased on September 14, 2020.

126.    No documents were filed with the Secretary of State indicating that an agent or executor of Mark Barrett's estate signed the Articles of Dissolution.

127.    No documents were filed with the Secretary of State indicating that anyone other than Mark Barrett signed the Articles of Dissolution.

128.    Upon information and belief, the signature of Mark Barrett on the Articles of Dissolution was fraudulent.

129.    Upon information and belief, Defendant, STEPHANIE C. GUTIERREZ, had knowledge that the signature on the Articles of Dissolution was fraudulent after-the-fact.

130.    Upon information and belief, Defendant, VERONICA C. BARRETT, distributed the assets of Defendant, BLUE OCEAN TACKLE, INC., and formed its successor-in-interest, Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC.

131.    Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, is the successor-in-interest to Defendant, BLUE OCEAN TACKLE, INC., by virtue of being a mere continuation after the death of Mark Barrett, and through the purchase and/or acquisition of the assets of Defendant, BLUE OCEAN TACKLE, INC., by Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC.

132.    On or about April 8, 2021, Defendant, STEPHANIE C. GUTIERREZ, was listed as the EVP of Defendant, BLUE OCEAN MARINE EQUIPMENT LLC, and on the company's annual report for 2022.

133.    Upon information and belief, the actions of Defendant, STEPHANIE C. GUTIERREZ, were done independently and/or in the course and scope of her employment with Defendant, BLUE OCEAN MARINE EQUIPMENT, LLC, the successor-in-interest of Defendant, BLUE OCEAN TACKLE, INC.

134.    Defendant, BLUE OCEAN TACKLE, INC., sold, supplied, distributed, marketed, packaged, and/or sold the Buoy.

135.    The Buoy was structurally compromised, had inferior shell thickness, and did not have an internal rod backing support, which led to a separating crack that caused the Barge to break free from the Buoy during the storm.

136.    The Buoy failed during a storm event with estimated wind speeds of 43 to 52 knots, which should not have been out of the range of the Buoy's capabilities.

137.    As a result, the Barge was a total loss.

138.    Plaintiffs, CERTAIN UNDERWRITERS, have been damaged in the amount of 6.9 million dollars for the constructive total loss of the Barge, less $15,000 recovered for salvage value, and $2,254,517.30 for wreck removal and associated pollution mitigation for a total of

$9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents).

WHEREFORE, Plaintiffs, CERTAIN UNDERWRITERS SUBSCRIBING TO POLICY NUMBERS OMH-3484819, OBR 10014587201, B5JH85661, VCF2002512, and AT4769A20MZA, as subrogee of NORTHLINE SEAFOODS LLC, demand judgment against Defendant, STEPHANIE C. GUTIERREZ, in the amount of $9,139,517.30 (Nine Million One Hundred Thirty-Nine Thousand Five Hundred Seventeen Dollars and Thirty Cents), plus pre and post-judgment interest, and its Court costs, and for all other relief deemed proper and just by this Court.

## DEMAND FOR JURY TRIAL

Plaintiffs, CERTAIN UNDERWRITERS SUBSCRIBING TO POLICY NUMBERS OMH-3484819, OBR 10014587201, B5JH85661, VCF2002512, and AT4769A20MZA, *as subrogee of* NORTHLINE SEAFOODS LLC, demand a jury trial on all issues so triable.

Respectfully submitted,

MCLEOD BROCK LAW, PLLC

**LINDSEY C. BROCK III, ESQ.**
Fla. Bar #971669
Primary E-Mail: lindsey@mcleodbrock.com
Secondary E-Mail: jennifer@mcleodbrock.com
9995 Gate Parkway North, Ste. 400
Jacksonville, Florida 32246
(904) 996-1100 Office Telephone
(904) 996-1120 Facsimile
**Attorneys for Plaintiffs, CERTAIN UNDERWRITERS SUBSCRIBING TO POLICY NUMBERS OMH-3484819, OBR 10014587201, B5JH85661, VCF2002512, and AT4769A20MZA,** *as subrogee of* **NORTHLINE SEAFOODS LLC**